UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-20598-CR-SCOLA

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

MAXWELL BERRY,

      Defendant,

_____/

## MAXWELL BERRY'S MEMORANDUM IN AID OF SENTENCING

Defendant, Maxwell Berry, herein after referred to as "Max" by and through his undersigned counsel, Jason W. Kreiss, Esq., and pursuant to U.S.S.G. § 6A1.2-3, p.s., Fed. R. Crim. P. 32 (d), (e)(2) and (f), and the Fifth Amendment to the United States Constitution, respectfully registers his Memorandum in Aid of Sentencing and states the following:

## INTRODUCTION

Maxwell Berry will stand before this Honorable Court on May 3, 2022, scared, remorseful, and accepting responsibility for his actions. Max is 23 years old, he recently graduated from college, and he has absolutely no criminal history. From the inception of this prosecution, Max indicated his willingness and desire to

accept responsibility for his actions on Frontier Flight #2239 which were in violation of Title 18 U.S.C. § 113 (a)(5).

Max Berry is a good man who committed a bad act, that was not planned, it was committed in an unsophisticated manner, and it is an aberration.   As such, Max is a prime subject for what the Supreme Court described as the "uniform and constant" task of the sentencing judge, "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81,113(1996).  The "unique study" in this case leads to the conclusion that a non-incacerative sentence with special conditions is an appropriate sentence that is "sufficient but not greater than necessary" to achieve justice in this case.

Max is respectfully requesting that the Court impose a non-incarcerative sentence which is permissible within the statutory framework which is synonymous with a (0-6 months, Zone A) advisory guideline range.


**SENTENCING FACTORS PURSUANT TO TITLE 18 U.S.C. § 3553(a)**

Under Title 18 U.S.C. § 3353(a)(1), a defendant's personal characteristics should be considered equally with the "nature and circumstances of the offense." However, the Guidelines give no weight to an individual's personal history and

characteristics unless one has criminal history. *See Rita v. United States*, 551 U.S. 338, 364-65 (2007) (stating "[t]he [Sentencing] Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics."). Accordingly, because this factor has not been included in Max's Presentence Investigation Report (PSR), he respectfully requests that the Court fairly and completely consider his personal / family history and characteristics as grounds for the imposition of a non-incarcerative sentence.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

**Max's Personal and Family History:**

Max Berry was born on October 27, 1998, the son of Christopher and Lisa Berry of Norwalk, Ohio. Max's childhood could best be described as a typical mid-western "family oriented" childhood as portrayed in the PSR. Max is the middle child in his family; his older brother is an elementary school teacher, and his younger sister is currently attending a medical college. After graduating from Norwalk High School in May 2017, Max attended Ohio Wesleyan University where he earned a BA in Finance Economics, graduating with a 3.34 GPA.

The conduct described in this case, although extremely serious, is a complete aberration compared to the way Max has lived his life to date. Beginning at an early age, Max learned the value of hard work, integrity and giving back to others. While in high school, he participated in a mission trip to the Dominican Republic

and had various other after-school and summer jobs in the community. What is most notable about Max's work (past and present) is his exemplary work ethic and attitude. David Morgan, the General Manager of the golf club that Max currently works at, wrote:

*There are not many people that have known Max Berry for longer than I have. Therefore, I feel it's important that I give you some history on the quality of person that he is over the past 16 years. Max has been a part of my life as a student, employee, teammate, and friend…. His quiet, calm demeanor and attention to detail is what separated him from all the others the moment we met 16 years ago…. He was the type of kid that no matter what you asked him to do he would smile and say "alright, no problem"…. I could go on and on about the instances that this kid went over and above to help someone else or stuck around to help do a job off the clock…. I've been around thousands of juniors over my time in the golf industry and Max is the epitome of someone you would want to call your son.*

Curt Lyme, a supervisor at the Golf Club that Max currently works at stated:

[D]*uring my relationship with Maxwell, I've experienced an individual who shows up earlier than asked, works hard, and carries themselves in a polite, respectful, manner. In addition, Maxwell is a family-person who has always presented himself with level headedness and grace.*

Neighbors Steve and Karen Schneider recall*:*

*When Max reached middle school he started mowing our lawn and began helping us with weekly chores and helped with just about anything we needed…He has cleaned our gutters; sawed, split, hauled and stacked our firewood; moved furniture; raked leaves; mulched our entire property; and shoveled our snow. Max has always exhibited a tremendous work ethic.*

Due to the tremendous media attention that this case garnered, Max's efforts to find a job utilizing his recently obtained college degree in finance economics were futile, as he was constantly being denied positions that he was applying for in the

finance world and elsewhere without an explanation.[1]  In addition to continuing his work at the Eagle Creek Golf Club under the direction of the people that know "the real Max Berry", he took the opportunity to be productive and give back to his community by performing 164 hours of volunteer work at the Habitat for Humanity. (See attached log) While working with Habitat for Humanity, Max assisted in the donation and sale process of inventory which funds the partner family build projects as well as construction of partner family homes. His tasks in the field typically included: wood and metal framing, drywall, roofing, painting, flooring, and trim / finish work.

**Letters of Support**

The best source of information about Max's life and his personal characteristics are the numerous letters of support written on his behalf by friends, family, educators, clergy, and others that know his upstanding character.  Despite being in shock and awe after seeing the repeated nightly news reports and social media reels of Max's conduct on Flight# 2239; respected people from his tight-knit community and elsewhere have taken the time to write letters of support to the Court.  They describe their first-hand experiences and knowledge of Max as a young man with a high moral compass, who has respect for his fellow person, and who has

---

[1] A recent google search of the incident yielded 161,000 search results.

been and will continue to be a productive member of the community.

Nick Lee, one of Max's high school teachers of wrote:

*I have known Max Berry since the fall of 2013, when he was a freshman at our school…. I honestly don't think I will ever forget where I was when I scrolled through my phone and saw Max's mug shot on my social media feed. I was in shock… I can honestly say in all my years I've had hundreds upon hundreds of experiences with Max, not one being negative.  Max comes from a wonderful, well respected, hard-working and humble family… [I] went out of my way to request Max's mother to teach both of my children in kindergarten. The Berry children were who I wanted my kids to be, so I knew who I wanted to help raise and teach my children.*

In describing Max's work in the Teen Leadership Corp Class, Mr. Lee states, *"once in the class, Max worked hard to plan fundraisers, spent many of his lunches with the elderly at a nearby assisted living center, and tutored kids in the elementary. He was, like most kids that I teach in that class, a maturing selfless adult.*


Dr. John A. Burns, M.D., Max's college graduate advisor recalls:

*I watched him in his capacity as president of his fraternity build consensus around difficult issues, organize charitable events, and nurture underclassmen with significant problems. He was a highly respected level-headed president.  On multiple occasions I had university administrators tell me that he was an exceptional person.*


Wayne Babcanec, Retired Superintendent of Schools, wrote:

*As a school administrator, I've observed Max from the time that he was in elementary school until he graduated from high school and then from college this past summer. Max was an exemplary student at all levels throughout his career in Norwalk City school district. While in high school, Max excelled both academically and athletically as a three-sport athlete…He was goal oriented and possessed a superior work ethic.  He was recognized as a leader and a positive role model by his teachers, coaches, and fellow students."*

Donald and Susan Nardecchia, family friends, teachers and coaches recall:

*[H]is demeanor at practice was always lowkey, a perfect example of a highly motivated yet mentally prepared and not excitable athlete. To say Max was an example to his teammates is an understatement. I never saw Max Berry be anything but a gentleman student athlete. He treated everyone with total respect, teammates, opponents, and personnel at the golf course…. Max and his family are hardworking, salt of the earth people.*

Max's art teacher, Rachel Hipp Wrote:

*Max's actions in handling of the situation on the frontier flight to Miami on August 4th 2021 were so out of character for the young man I know. The Max I know is respectful and a rule follower; He would not act out or defy someone in authority…. I feel that Max will make the most of the counseling he is receiving and in time be able to develop the skills needed to make wise decisions for his future.*

Roger and Mary Wilkinson, Max's grandparents state:

*He has taken opportunities to work with younger students in school and sports settings, worked on a mission team, offered lawn and snow services to elderly church members, and helped neighbors as needed. He is a hard worker and takes great pride in what he can do for others.*

Bradley E. Cooley, Superintendent of schools, wrote:

*[A]s a member of the National Honor Society, he exemplified the pillars of the organization, with character being one of the mainstays….The Berry name was, and is, rock solid in the Norwalk community-they are good people that do good things for other people. Max fit that very same mold… shockingly, a viral video revealed a person that I did not recognize, a Berry I do not know.*

Professor Nancy Rutkowski, wrote:

*I met Max at the start of his junior year of college…I found Max to be dependable, capable and committed to improving not only the circumstances of IFC, but our fraternity& sorority community all together…One of the first positions added to the council was that of a risk management officer.  Max championed this role and*

*community education (fire safety, anti-hazing) started to emerge from this new position. Near the end of the year, his fraternity nominated him for the Values in Action award, a new award in the fraternity and sorority community meant to elevate role models. After 30+ years as a student affairs administrator and working so closely with Max for two years, I was confident that he was deserving of this recognition... as a long serving, successful administrator, I feel I'm a good judge of character. Prior to the very public day Max had on frontier airlines, I knew (still know) a kind, compassionate, dependable, committed and hardworking young man.*

**Self -Reform**

Today, Max not only comprehends the significance of his conduct, but he also sees his personal issues from a completely different perspective. Immediately after his arrest, he submitted to a mental health and substance abuse evaluation to better understand his conduct, and learn how to avoid similar situations in the future. He was evaluated by Dr. Lisa Tinker who diagnosed him as suffering from depression and anxiety as noted in the PSR. Max has continued attending bi-weekly counseling sessions to *"help him develop coping skills for anxiety"* and process the events that led to the charged conduct.[2] Max has also voluntarily submitted to drug and alcohol testing on a weekly basis since the time of his arrest. All 34 test results have been negative.[3] Max has also successfully completed a 12 session anger management course provided by Open Path mental health education.[4] As the Court will hear at the time of his allocution, Max is very reflective of not only how serious his conduct was, but how much impact his actions

---

[2] Report from Counselor Lisa Frericks, MA, LPCC-S submitted to U.S. Probation
[3] Weekly drug and alcohol testing lab results submitted to U.S. Probation.
[4] Copy of certificate of completion provided to U.S. Probation.

had on the flight attendants and other crew members, the other passengers, his family, and his community.

## CONCLUSION

If ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance." *United States v. Adelson*, 44 F.Supp. 2d at 514 (2d Cir. 2006).

Max has absolutely learned his lesson and is paying a significant price for his conduct. He was arrested and his inexcusable and embarrassing conduct went viral on mainstream media, the internet, and social media.  This stigma will follow him around and hinder his personal relationships, his ability to obtain employment, his eligibility for housing, positions of trust, and will affect other life issues for the foreseeable future.

THIS SPACE INTENTIONALLY LEFT BLANK

Based upon the aforementioned factors and personal anecdotes about Maxwell Berry, the Court can tailor a non-incarcerative sentence that will provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and deter others; thereby satisfying 18 U.S.C. § 3553(a).

Respectfully submitted:

/s/ *Jason W. Kreiss, Esq.*
Jason W. Kreiss, Esq.
FBN: 87912
Attorney for defendant Maxwell Berry

The Kreiss Law Firm
1824 SE 4th Ave
Fort Lauderdale, FL 33316
Tel. 954-525-1971
Fax  954-525-1971
jwk@kreisslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of April 2022, I electronically filed the foregoing pleading with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day upon all counsel of record via the CM/ECF electronic filing system.

/s/ *Jason W. Kreiss, Esq*.
Jason W. Kreiss, Esq.